IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| THOMAS LAPHAM,<br><br>　　　Plaintiff,<br><br>　　v.<br><br>TROLLEY PUB OF NORTH CAROLINA, LLC,<br><br>KAAPRO & COLE VENTURES, LLC,<br><br>KAI KAAPRO,<br><br>and<br><br>ANDREW COLE.<br><br>　　　Defendants. | CIVIL ACTION NO. 1:16-CV-469-LO-IDD |

## VERIFIED AMENDED COMPLAINT

COMES NOW Plaintiff Thomas Lapham, by counsel, and files his Complaint against Defendants Trolley Pub of North Carolina, LLC; Kaapro & Cole Ventures, LLC; Kai Kaapro; and Andrew Cole, setting forth the following:

### PARTIES

1.　　Plaintiff Thomas Lapham ("*Lapham*") is an adult citizen of the Commonwealth of Virginia, residing in Fairfax County.

2.　　Defendant Trolley Pub of North Carolina, LLC ("*TPNC*") is a North Carolina limited liability company that was formed on January 12, 2012.

3.　　Defendant Kaapro & Cole Ventures, LLC ("*K&C*") is an Arizona limited liability company.  K&C is a member of TPNC and, at all times material hereto, has held a controlling

1

interest in TPNC.

    4.      Defendant Kai Kaapro ("*Kaapro*") is an adult citizen of the State of North Carolina.  Kaapro represents himself to be a 2012 graduate of Pennsylvania State University Law School and a lawyer.  Kaapro is, and has been at all times material hereto, a member and manager of K&C.

    5.      Defendant Andrew Cole ("*Cole*") is an adult citizen of the State of Texas.  Cole is, and has been at all times material hereto, a member and manager of K&C.

    6.      While not a party to this action, Jeff Murison ("*Murison*") is an adult citizen of the State of North Carolina.  Murison is a member of TPNC.

## JURISDICTION AND VENUE

    7.      This Court has personal jurisdiction over the Defendants in that this action arises from the Defendants' transacting business, contracting to supply services or things, causing tortious injury by an act or omission, and having an interest in, using, or possessing real property, in the Commonwealth of Virginia, as described herein.  Moreover, the Court has personal jurisdiction over the Defendants in that this action arises from the Defendants' causing injury in the Commonwealth of Virginia by an act or omission outside the Commonwealth, where they regularly do or solicit business, or engage in any other persistent course of conduct, or derive substantial revenue from goods used or consumed or services rendered, in the Commonwealth of Virginia.

    8.      This action was filed in the Circuit Court of Fairfax County, Virginia on March 28, 2016.  Venue was proper in Fairfax County because a substantial part of the events or omissions giving rise to the claim occurred in Fairfax County and the parties expressly consented to venue in the Commonwealth of Virginia.

2

9.      This action was removed to this Court on April 27, 2016.

## FACTS COMMON TO ALL COUNTS

10.      No later than October 2012, Lapham, Kaapro, and Cole began discussing joining together to build and operate a business offering pedal-powered tours of bars in cities and towns in the United States of America (the "*Trolley Pub Business*").

11.      On February 1, 2013, Lapham, Kaapro, and Cole held a conference call (the "*February 1, 2013 Conference Call*") during which they discussed opening the Trolley Pub Business in Virginia, Maryland, the District of Columbia, and Delaware. Lapham connected to the February 1, 2013 Conference Call from his home in Vienna, Virginia. Upon information and belief, Kaapro connected to the February 1, 2013 Conference Call from Raleigh, North Carolina and Cole connected to the conference call from Austin, Texas.

12.      During the February 1, 2013 Conference Call, Kaapro and Cole promised to: (a) provide Lapham with a 50% ownership interest in the Trolley Pub Business in Virginia, Maryland, the District of Columbia, and Delaware; (b) contribute the TROLLEY PUB trademark, logo, and branding; know-how; marketing plans; technical information; supplier information; financial and business plans; contractor and builder information; and software and design work (together, the "*Trolley Pub Intangible Property*") to the Trolley Pub Business in Virginia, Maryland, the District of Columbia, and Delaware; and (c) operate the Trolley Pub Business in Virginia, Maryland, the District of Columbia, and Delaware (together, the "*February 1, 2013 Promises*"). At the time of the February 1, 2013 Promises, Lapham understood that Kaapro and Cole owned, or owned and controlled the entity or entities that owned, the Trolley Pub Intangible Property.

13.      In return for the February 1, 2013 Promises, Lapham promised to provide capital

3

to start and run the Trolley Pub Business in Virginia, Maryland, the District of Columbia, and Delaware.

14.    Pursuant to the agreement reached during the February 1, 2013 Conference Call, evidenced by the mutual promises of the parties thereto, a partnership or joint venture was formed.

15.    In making the February 1, 2013 Promises, Kaapro and Cole represented that they had the present intent to perform those promises (the "***February 1, 2013 Representations***"). Such a representation of intent is a representation of fact.

16.    At the time that the February 1, 2013 Promises were made, Kaapro and Cole had no intention to perform those promises.  Kaapro and Cole never intended to provide Lapham with a 50% ownership interest in the Trolley Pub Business in Virginia, Maryland, the District of Columbia, and Delaware and never intended to contribute the Trolley Pub Intangible Property to that business.  Instead, Kaapro and Cole intended to maintain ownership and control of the Trolley Pub Intangible Property and grant rights in such property to a competing entity or entities in which Lapham had no ownership interest but that would be authorized to operate the Trolley Pub Business in those states, thereby diluting Lapham's promised 50% ownership interest.

17.    On February 4, 2013, Lapham and TPNC executed a Memorandum of Terms for a Proposed Business Partnership Agreement (the "***Partnership Memorandum***") which sets forth the terms upon which TPNC "proposes to create a Business Partnership . . . with Tom Lapham." A true and accurate copy of the Partnership Memorandum is attached hereto and incorporated herein as Exhibit A.

18.    The Partnership Memorandum states that TPNC and Lapham "agree to create a Virginia Limited Liability Company entitled "Trolley Pub of Virginia, LLC" which will engage

in a business according to the business model discussed over the past month [namely, the Trolley Pub Business doing business in Virginia, Maryland, the District of Columbia, and Delaware, in which Lapham would hold a 50% ownership interest]." It further provided that Lapham would contribute $60,000 to fund the venture while TPNC would contribute, among other things, the Trolley Pub Intangible Property and other property to be determined. By the execution of the Partnership Memorandum, a partnership or joint venture was formed.

19.     In executing the Partnership Memorandum, Kaapro and TPNC represented that they had the present intent to perform their promises contained therein. Such a representation of intent is a representation of fact.

20.     At the time that the Partnership Agreement was signed, Kaapro and TPNC had no intention to perform their promises contained therein. Kaapro and TPNC never intended to provide Lapham with a 50% ownership interest in the Trolley Pub Business in Virginia, Maryland, the District of Columbia, and Delaware and never intended to contribute the Trolley Pub Intangible Property to that business. Instead, Kaapro and TPNC intended to maintain ownership and control of the Trolley Pub Intangible Property and grant rights in such property to a competing entity or entities in which Lapham had no ownership interest but that would be authorized to operate the Trolley Pub Business in those states, thereby diluting Lapham's promised 50% ownership interest.

21.     Kaapro and Cole made the February 1, 2013 Representations and Kaapro and TPNC made the representations set forth in the Partnership Memorandum with the intent of inducing Lapham to rely on them and to invest money in the Trolley Pub Business.

22.     Lapham did, in fact, rely upon the February 1, 2013 Representations and those set forth in the Partnership Memorandum in investing thousands of dollars in the Trolley Pub

Business through March 6, 2013. During that period of time, Lapham was the sole investor in the Trolley Pub Business. Kaapro used some of the money invested by Lapham during this time to pay himself a salary for running the Trolley Pub Business. By virtue of Lapham's investment in the Trolley Pub Business, the ownership interest of TPNC, Kaapro, and Cole in such business increased in value.

23.     On March 4, 2013, Kaapro traveled to Virginia to meet with Lapham and discuss the Trolley Pub Business. While driving in the Northern Virginia area on March 5 or 6, 2013 (the "*March 5 or 6, 2013 Drive*"), Kaapro and Lapham discussed taking the Trolley Pub Business "nationwide." During those conversations, Kaapro represented to, and agreed with, Lapham that they would "take the business nationwide," with the exception of "Carolina" and that Lapham would be a 50% owner in the "nationwide" Trolley Pub Business with K&C owning the remaining 50% of the business. Kaapro indicated that this would be a separate ownership from the Virginia Trolley Pub Business because he and Cole had an agreement with Murison and TPNC to include TPNC in the operation of any location of the Trolley Pub Business located within 250 miles of Raleigh, North Carolina. Kaapro and Lapham agreed that Lapham would contribute capital to this venture and that "Kaapro and Cole's" contribution would include running the business and contributing all of the intellectual property and other information necessary to operate the business.

24.     During the March 5 or 6, 2013 Drive, Kaapro promised to: (a) provide Lapham with a 50% ownership interest in the Trolley Pub Business nationwide, with the exception of "Carolina"; (b) contribute the Trolley Pub Intangible Property to the nationwide Trolley Pub Business; and (c) operate the nationwide Trolley Pub Business (the "*March 5 or 6, 2013 Promises*").

6

25.     In return for the March 5 or 6, 2013 Promises, Lapham promised to provide capital to start and run the nationwide Trolley Pub Business.

26.     Pursuant to the agreement reached during the March 5 or 6, 2013 Drive, evidenced by the mutual promises of the parties thereto, a partnership or joint venture was formed.

27.     In making the March 5 or 6, 2013 Promises, Kaapro represented that he, and any entity on whose behalf such promises were made, had the present intent to perform those promises (the "*March 5 or 6, 2013 Representations*").  Such a representation of intent is a representation of fact.

28.     On March 7, 2016, in Clarendon, Virginia, Lapham and Kaapro continued their discussions about the nationwide (with the exception of "Carolina") Trolley Pub Business and Kaapro reiterated the March 5 or 6, 2013 Promises and March 5 or 6, 2013 Representations.

29.     At the time that the March 5 or 6, 2013 Promises were made, Kaapro, and any entity on whose behalf such promises were made, had no intention to perform those promises. Kaapro and Cole never intended to provide Lapham with a 50% ownership interest in the nationwide Trolley Pub Business (with the exception of "Carolina").  Instead, Kaapro and Cole intended to maintain ownership and control of the Trolley Pub Intangible Property and grant rights in such property to a competing entity or entities in which Lapham had no ownership interest but that would be authorized to operate the Trolley Pub Business in those states, thereby diluting Lapham's promised 50% ownership interest.

30.     On March 15, 2013, Kaapro and TPNC proposed an operating agreement for Trolley Pub of Virginia, LLC ("*TPV*") (such proposed operating agreement, the "*Proposed TPV Operating Agreement*") by which TPNC would "contribute," among other things, the Trolley

Pub Intangible Property to TPV in return for a 50% ownership share in TPV. A true and accurate copy of the Proposed TPV Operating Agreement is attached hereto and incorporated herein as Exhibit B.

31.    Under the Proposed TPV Operating Agreement, Lapham's $60,000 contribution would result in his owning 50% of TPV. With respect to the property that Kaapro and TPNC would contribute to TPV in exchange for their ownership interest in TPV, the representations in the Proposed TPV Operating Agreement were consistent with the oral representations made by Kaapro and TPNC to Lapham in preceding weeks and months.

32.    By virtue of the Proposed TPV Operating Agreement, Kaapro and TPNC represented their existing intention to "contribute," among other things, the Trolley Pub Intangible Property to TPV in return for a 50% ownership share in TPV. However, at the time that these representations were made, neither Kaapro nor TPNC had the present intent to perform those promises. In fact, at the time that these representations were made, Kaapro and TPNC did not intend to contribute the Trolley Pub Intangible Property to TPV but only to permit TPV to use that property, under certain conditions and in limited areas. Moreover, Kaapro and TPNC intended to maintain ownership and control of the Trolley Pub Intangible Property in a competing entity or entities in which Lapham had no ownership interest but that would be authorized to operate the Trolley Pub Business in those states, thereby diluting Lapham's promised 50% ownership interest.

33.    In proposing the Proposed TPV Operating Agreement, Kaapro and TPNC represented that they had the present intent to perform their promises contained therein. Such a representation of intent is a representation of fact.

34.    Kaapro and TPNC made the representations in connection with the Proposed TPV

Operating Agreement with the intent of inducing Lapham to rely on them and to invest money in the Trolley Pub Business.

35.     Lapham did, in fact, rely upon the February 1, 2013 Representations, the March 5 or 6, 2013 Representations, those set forth in the Partnership Memorandum, and those made in connection with the Proposed TPV Operating Agreement in investing at least $400,000 in the Trolley Pub Business from March 6, 2013 to June 1, 2015.  During that period of time, Lapham was the sole investor in the Trolley Pub Business.  Kaapro used some of the money invested by Lapham during this time to pay himself a salary for running the Trolley Pub Business.  By virtue of Lapham's investment in the Trolley Pub Business, the ownership interest of TPNC, K&C, Kaapro, and Cole in such business increased in value.

36.     In reliance upon the February 1, 2013 Representations, the March 5 or 6, 2013 Representations, those set forth in the Partnership Memorandum, and those made in connection with the Proposed TPV Operating Agreement, Lapham traveled to Atlanta, Georgia in September 2013 to meet Kaapro for the purpose of scouting a location for the Trolley Pub Business.  As a result, Lapham incurred travel expenses and took time away from his other business ventures.

37.     In reliance upon the February 1, 2013 Representations, the March 5 or 6 Representations, those set forth in the Partnership Memorandum, and those made in connection with the Proposed TPV Operating Agreement, Lapham traveled to Richmond, Virginia in October 2013 to meet Kaapro for the purpose of scouting a location for the Trolley Pub Business.  As a result, Lapham incurred travel expenses and took time away from his other business ventures.

38.     In reliance upon the February 1, 2013 Representations, the March 5 or 6

Representations, those set forth in the Partnership Memorandum, and those made in connection with the Proposed TPV Operating Agreement, Lapham traveled to Birmingham, Alabama in October 2013 to meet Kaapro for the purpose of scouting a location for the Trolley Pub Business. As a result, Lapham incurred travel expenses and took time away from his other business ventures.

39.     In reliance upon the February 1, 2013 Representations, the March 5 or 6 Representations, those set forth in the Partnership Memorandum, and those made in connection with the Proposed TPV Operating Agreement, Lapham traveled to St. Thomas, U.S. Virgin Islands in January 2014 to meet Kaapro for the purpose of scouting a location for the Trolley Pub Business. As a result, Lapham incurred travel expenses and took time away from his other business ventures.

40.     Starting in May or June of 2014, Kaapro, Cole, and Lapham discussed the formation of a holding company to further the operation of the Trolley Pub Business nationwide (with the exception of "Carolina").

41.     On June 7, 2015, Kaapro, Cole, and Kaapro & Cole Ventures, LLC proposed an operating agreement for Trolley Pub Holdings, LLC ("*TPH*") (such proposed operating agreement, the "*Proposed TPH Operating Agreement*") by which K&C would "contribute," among other things, the Trolley Pub Intangible Property to TPH in return for a 50% ownership share in TPV. A true and accurate copy of the Proposed TPH Operating Agreement is attached hereto and incorporated herein as Exhibit C.

42.     Under the Proposed TPH Operating Agreement, Lapham's $400,000 contribution would result in his owning 50% of TPH. With respect to the property that Kaapro and K&C would contribute to TPH in exchange for their ownership interest in TPH, the representations in

10

the Proposed TPH Operating Agreement were consistent with the prior oral representations made by Kaapro and Cole.

43.     By virtue of the Proposed TPH Operating Agreement, Kaapro and K&C represented their existing intention to "contribute," among other things, the Trolley Pub Intangible Property to TPH in return for a 50% ownership share in TPH.  However, at the time that these representations were made, neither Kaapro nor K&C had the present intent to perform those promises.  In fact, at the time that these representations were made, all of the property that Kaapro and K&C promised in the Proposed TPH Operating Agreement to contribute to TPH had already been contributed to TPNC by virtue of the Operating Agreement of Trolley Pub of North Carolina, LLC dated February 29, 2012 (the "*TPNC Operating Agreement*").  Accordingly, though Kaapro had previously represented that he and Cole had an agreement with Murison and TPNC to include TPNC in the operation of any location of the Trolley Pub Business *located within 250 miles of Raleigh, North Carolina*, in reality, the agreement was much broader; in fact, the agreement between Kaapro, Cole, Murison, and TPNC provided TPNC with exclusive rights to operate the Trolley Pub Business in every state in the United States.  A true and accurate copy of the TPNC Operating Agreement is attached hereto and incorporated herein as Exhibit D.

44.     In proposing the Proposed TPH Operating Agreement, Kaapro and TPNC represented that they had the present intent to perform their promises contained therein.  Such a representation of intent is a representation of fact.

45.     Kaapro and K&C made the representations in connection with the Proposed TPH Operating Agreement with the intent of inducing Lapham to rely on them and to invest money in the Trolley Pub Business.

46.     Lapham did, in fact, rely upon the February 1, 2013 Representations, the March 5

11

or 6, 2013 Representations, those set forth in the Partnership Memorandum, and those made in connection with the Proposed TPV Operating Agreement and the Proposed TPH Operating Agreement in investing at least $12,000 in the Trolley Pub Business from June 1, 2015 to the present. During that period of time, Lapham was the sole investor in the Trolley Pub Business. Kaapro used some of the money invested by Lapham during this time to pay himself a salary for running the Trolley Pub Business. By virtue of Lapham's investment in the Trolley Pub Business, the ownership interest of TPNC, K&C, Kaapro, and Cole in such business increased in value.

47.     Before December 2, 2015 (and, upon information and belief, before March 5, 2013), Kaapro and Cole entered into an agreement with Murison and/or TPNC that TPNC would:  (a) have the exclusive right to run the Trolley Pub Business, and use the Trolley Pub Intangible Property, in no less than three states (North Carolina, South Carolina, and Georgia); and (b) have the non-exclusive right to run the Trolley Pub Business, and use the Trolley Pub Intangible Property, in every other state in the United States.

48.     On or about December 2, 2015, K&C and TPNC entered into an Intellectual Property Assignment and License Back Agreement (the "*License Back Agreement*"). A true and accurate copy of the License Back Agreement is attached hereto and incorporated herein as Exhibit E.

49.     Among other things, the License Back Agreement permits TPNC to retain an exclusive right to the Trolley Pub Intangible Property in North Carolina, South Carolina, and Georgia and a non-exclusive right to the Trolley Pub Intangible Property in every other state.

50.     At the time that the License Back Agreement was executed, K&C owned more than 50% of TPNC. Accordingly, K&C had the controlling interest in TPNC.

51.     At the time that the License Back Agreement was executed, Kaapro and Cole owned more than 50% of K&C.  Accordingly, Kaapro and Cole had the controlling interest in K&C.

52.     As a result, Kaapro and Cole effectively controlled the actions of both K&C and TPNC.  Despite this fact, and their previous representations and promises to, and agreement with, Lapham, the parties to the License Back Agreement included terms that made it impossible for Lapham to own 50% of a nationwide (with the exception of "Carolina") Trolley Pub Business.  In particular, by permitting TPNC to retain an exclusive right to the Trolley Pub Intangible Property in North Carolina, South Carolina, and Georgia and a non-exclusive right to the Trolley Pub Intangible Property in every other state, Kaapro and Cole ensured that the Trolley Pub Business in which Lapham held a 50% ownership interest could do business in no more than 47 of the 49 United States (excepting North Carolina) and would have to share each of those 47 states with a Trolley Pub entity or entities in which Lapham holds no ownership interest whatsoever.

53.     On or about December 15, 2015, K&C, Kaapro, and Cole explained to Lapham, through counsel, that they were "unwilling" to contribute the Trolley Pub Intangible Property in a manner that fulfills their obligations, and was consistent with their representations, to Lapham.  Moreover, K&C, Kaapro, and Cole also conceded that they never intended to contribute any of the Trolley Pub Intangible Property to the Trolley Pub Business owned, in part, by Lapham because they had previously contributed the Trolley Pub Intangible Property to TPNC.

54.     All conditions precedent to the filing of this action have been satisfied.

**COUNT I:  ACTUAL FRAUD**
(Against Kaapro and Cole)

13

55.     The allegations contained in paragraphs 1 through 54 are re-alleged and incorporated as if fully set forth herein.

56.     Pursuant to their agreement reached on February 1, 2013, Lapham, Kaapro, and Cole became partners or joint venturers in the Trolley Pub Business.

57.     Accordingly, Kaapro and Cole owed to Lapham a fiduciary duty to disclose to Lapham all material facts concerning the Trolley Pub Business, among other duties.

58.     Kaapro made each of the false representations of material fact referenced herein with the express authorization of Cole.  After March 7, 2013, Cole was involved in conversations with Lapham in which the March 5 or 6, 2013 Representations and March 5 or 6, 2013 Promises were reiterated to Lapham.

59.     As described herein, Kaapro and Cole made false representations of material fact to Lapham.  Those false representations of material fact were made intentionally and knowingly, with the intent to mislead Lapham.  Lapham relied upon the false representations of fact and, as a result, was damaged.

60.     From February 1, 2013 through December 2, 2015, Kaapro and Cole knowingly and deliberately failed to disclose to Lapham the terms of the TPNC Operating Agreement or the fact that they had transferred all rights to the property needed to build and operate the Trolley Pub Business nationwide to TPNC.  Such failure to disclose, in the face of a duty to do so, constitutes fraud as Lapham relied upon it and was damaged thereby.

61.     At some point prior to December 2, 2015, Kaapro and Cole made an agreement with Murison that TPNC would have exclusive rights to all of the property necessary to build and operate the Trolley Pub Business in certain states and non-exclusive rights to that property in all other states.  This agreement is inconsistent with the promises made to Lapham that Lapham

14

would be the 50% owner of the nationwide (with the exception of "Carolina") Trolley Pub Business. From the time that this agreement was made until December 2, 2015, Kaapro and Cole knowingly and deliberately failed to disclose to Lapham the terms of the agreement, despite their duty to do so. Such failure to disclose, in the face of a duty to do so, constitutes fraud as Lapham relied upon it and was damaged thereby.

62.     Lapham had no reason to believe that Kaapro and Cole had committed fraud until December 2, 2015, when Lapham's counsel first received a copy of the TPNC Operating Agreement and the License Back Agreement.

WHEREFORE, in consideration of the foregoing, Plaintiff Thomas Lapham respectfully prays for the following relief against Defendants Kai Kaapro and Andrew Cole, jointly and severally:  (a) an award of his compensatory damages, in an amount to be proven at trial; (b) an award of punitive damages, in an amount not to exceed $350,000; (c) an award of his reasonable attorney's fees and costs incurred in bringing this action; and (d) such other and further relief as the Court may deem just and appropriate.

### COUNT II:  ACTUAL FRAUD
(Against K&C, Plead in the Alternative to Count III)

63.     The allegations contained in paragraphs 1 through 54 are re-alleged and incorporated as if fully set forth herein.

64.     Pursuant to their agreement on March 5 or 6, 2013, Lapham and K&C became partners or joint venturers in the Trolley Pub Business.

65.     Accordingly, K&C owed to Lapham a fiduciary duty to disclose to Lapham all material facts concerning the Trolley Pub Business, among other duties.

66.     The representations made by Kaapro and Cole and described herein were made on

behalf of K&C. As described herein, K&C made false representations of material fact to Lapham. Those false representations of material fact were made intentionally and knowingly, with the intent to mislead Lapham. Lapham relied upon the false representations of fact and, as a result, was damaged.

67.    From March 5, 2013 through December 2, 2015, K&C knowingly and deliberately failed to disclose to Lapham the terms of the TPNC Operating Agreement or the fact that it had transferred all rights to the property needed to build and operate the Trolley Pub Business nationwide, with the exception of "Carolina", to TPNC, despite its duty to do so. Such failure to disclose, in the face of a duty to do so, constitutes fraud as Lapham relied upon it and was damaged thereby.

68.    At some point prior to December 2, 2015, K&C made an agreement with Murison that TPNC would have exclusive rights to all of the property necessary to build and operate the Trolley Pub Business in certain states and non-exclusive rights to that property in all other states. This agreement is inconsistent with the promises made to Lapham that Lapham would be the 50% owner of the nationwide (with the exception of "Carolina") Trolley Pub Business. From the time that this agreement was made until December 2, 2015, K&C knowingly and deliberately failed to disclose to Lapham the terms of the agreement, despite its duty to do so. Such failure to disclose, in the face of a duty to do so, constitutes fraud as Lapham relied upon it and was damaged thereby.

69.    Lapham had no reason to believe that K&C had committed fraud until December 2, 2015, when Lapham's counsel first received a copy of the TPNC Operating Agreement and the License Back Agreement.

WHEREFORE, in consideration of the foregoing, Plaintiff Thomas Lapham respectfully

16

prays for the following relief against Defendant Kaapro & Cole Ventures, LLC: (a) an award of his compensatory damages, in an amount to be proven at trial; (b) an award of punitive damages, in an amount not to exceed $350,000; (c) an award of his reasonable attorney's fees and costs incurred in bringing this action; and (d) such other and further relief as the Court may deem just and appropriate.

**COUNT III:  ACTUAL FRAUD**
(Against TPNC, Plead in the Alternative to Count II)

70.     The allegations contained in paragraphs 1 through 54 are re-alleged and incorporated as if fully set forth herein.

71.     Pursuant to their agreement reached on February 4, 2013, Lapham and TPNC became partners or joint venturers in the Trolley Pub Business.

72.     Accordingly, TPNC owed to Lapham a fiduciary duty to disclose to Lapham all material facts concerning the Trolley Pub Business, among other duties.

73.     The representations made by Kaapro and Cole and described herein were made on behalf of TPNC.  As described herein, TPNC made false representations of material fact to Lapham.  Those false representations of material fact were made intentionally and knowingly, with the intent to mislead Lapham.  Lapham relied upon the false representations of fact and, as a result, was damaged.

74.     From February 4, 2013 through December 2, 2015, TPNC knowingly and deliberately failed to disclose to Lapham the terms of the TPNC Operating Agreement or the fact that it intended to retain all rights to the property needed to build and operate the Trolley Pub Business nationwide, with the exception of "Carolina".  Such failure to disclose, in the face of a duty to do so, constitutes fraud as Lapham relied upon it and was damaged thereby.

17

75.     Lapham had no reason to believe that TPNC had committed fraud until December 2, 2015, when Lapham's counsel first received a copy of the TPNC Operating Agreement and the License Back Agreement.

WHEREFORE, in consideration of the foregoing, Plaintiff Thomas Lapham respectfully prays for the following relief against Defendant Trolley Pub of North Carolina, LLC:  (a) an award of his compensatory damages, in an amount to be proven at trial; (b) an award of punitive damages, in an amount not to exceed $350,000; (c) an award of his reasonable attorney's fees and costs incurred in bringing this action; and (d) such other and further relief as the Court may deem just and appropriate.

## COUNT IV:  CONSTRUCTIVE FRAUD
(Against Kaapro and Cole, Plead in the Alternative to Count I)

76.     The allegations contained in paragraphs 1 through 54 are re-alleged and incorporated as if fully set forth herein.

77.     As described herein, K&C made false representations of material fact to Lapham. Those false representations of material fact were made innocently or negligently.  Lapham relied upon the false representations of fact and, as a result, was damaged.

78.     Lapham had no reason to believe that K&C had committed fraud until December 2, 2015, when Lapham's counsel first received a copy of the TPNC Operating Agreement and the License Back Agreement.

WHEREFORE, in consideration of the foregoing, Plaintiff Thomas Lapham respectfully prays for the following relief against Defendant Kaapro & Cole Ventures, LLC:  (a) an award of his compensatory damages, in an amount to be proven at trial; (b) an award of punitive damages, in an amount not to exceed $350,000; (c) an award of his reasonable attorney's fees and costs

incurred in bringing this action; and (d) such other and further relief as the Court may deem just and appropriate.

### COUNT V:  CONSTRUCTIVE FRAUD
(Against K&C, Plead in the Alternative to Counts II and VI)

79.     The allegations contained in paragraphs 1 through 54 are re-alleged and incorporated as if fully set forth herein.

80.     The representations made by Kaapro and Cole and described herein were made on behalf of K&C.  As described herein, Kaapro and Cole made false representations of material fact to Lapham.  Those false representations of material fact were made innocently or negligently.  Lapham relied upon the false representations of fact and, as a result, was damaged.

81.     Lapham had no reason to believe that Kaapro and Cole had committed fraud until December 2, 2015, when Lapham's counsel first received a copy of the TPNC Operating Agreement and the License Back Agreement.

WHEREFORE, in consideration of the foregoing, Plaintiff Thomas Lapham respectfully prays for the following relief against Defendants Kai Kaapro and Andrew Cole, jointly and severally:  (a) an award of his compensatory damages, in an amount to be proven at trial; (b) an award of punitive damages, in an amount not to exceed $350,000; (c) an award of his reasonable attorney's fees and costs incurred in bringing this action; and (d) such other and further relief as the Court may deem just and appropriate.

### COUNT VI:  CONSTRUCTIVE FRAUD
(Against TPNC, Plead in the Alternative to Counts III and V)

82.     The allegations contained in paragraphs 1 through 54 are re-alleged and incorporated as if fully set forth herein.

83.     The representations made by Kaapro and Cole and described herein were made on

19

behalf of TPNC. As described herein, TPNC made false representations of material fact to Lapham. Those false representations of material fact were made innocently or negligently. Lapham relied upon the false representations of fact and, as a result, was damaged.

84.     Lapham had no reason to believe that TPNC had committed fraud until December 2, 2015, when Lapham's counsel first received a copy of the TPNC Operating Agreement and the License Back Agreement.

WHEREFORE, in consideration of the foregoing, Plaintiff Thomas Lapham respectfully prays for the following relief against Defendant Trolley Pub of North Carolina, LLC: (a) an award of his compensatory damages, in an amount to be proven at trial; (b) an award of punitive damages, in an amount not to exceed $350,000; (c) an award of his reasonable attorney's fees and costs incurred in bringing this action; and (d) such other and further relief as the Court may deem just and appropriate.

### COUNT VII:  BREACH OF CONTRACT
(Against Kaapro and Cole, Plead in the Alternative to Counts VIII, IX, and X)

85.     The allegations contained in paragraphs 1 through 54 are re-alleged and incorporated as if fully set forth herein.

86.     In return for Lapham providing funding for the Trolley Pub Business, Kaapro and Cole promised to provide all of the intangible property necessary to operate the business nationwide, with the exception of "Carolina" (including, the Trolley Pub Intangible Property), and to give Lapham a 50% ownership interest in the nationwide (with the exception of "Carolina") Trolley Pub Business.

87.     As of December 15, 2015, Kaapro and Cole have made clear that they will not fulfill their obligation to provide all of the intangible property necessary to operate the business

nationwide, with the exception of "Carolina", and to give Lapham a 50% ownership interest in the nationwide (with the exception of "Carolina") Trolley Pub Business.

88.     The conduct of Kaapro and Cole constitutes a material breach of their contract with Lapham.  Lapham has been damaged by that material breach.

WHEREFORE, in consideration of the foregoing, Plaintiff Thomas Lapham respectfully prays for the following relief against Defendants Kai Kaapro and Andrew Cole, jointly and severally:  (a) an award of his compensatory damages, in an amount to be proven at trial; and (b) such other and further relief as the Court may deem just and appropriate.

### COUNT VIII:  BREACH OF CONTRACT
(Against K&C, Plead in the Alternative to Counts VII, IX, and X)

89.     The allegations contained in paragraphs 1 through 54 are re-alleged and incorporated as if fully set forth herein.

90.     In return for Lapham providing funding for the Trolley Pub Business, K&C promised to provide all of the intangible property necessary to operate the business nationwide, with the exception of "Carolina" (including, the Trolley Pub Intangible Property), and to give Lapham a 50% ownership interest in the nationwide (with the exception of "Carolina") Trolley Pub Business.

91.     As of December 15, 2015, K&C has made clear that it will not fulfill its obligation to provide all of the intangible property necessary to operate the business nationwide, with the exception of "Carolina", and to give Lapham a 50% ownership interest in the nationwide (with the exception of "Carolina") Trolley Pub Business.

92.     The conduct of K&C constitutes a material breach of its contract with Lapham. Lapham has been damaged by that material breach.

21

WHEREFORE, in consideration of the foregoing, Plaintiff Thomas Lapham respectfully prays for the following relief against Defendant Kaapro & Cole Ventures, LLC:  (a) an award of his compensatory damages, in an amount to be proven at trial; and (b) such other and further relief as the Court may deem just and appropriate.

**COUNT IX:  ANTICIPATORY BREACH OF CONTRACT**
(Against Kaapro and Cole, Plead in the Alternative to Counts VII, VIII, and X)

93.     The allegations contained in paragraphs 1 through 54 are re-alleged and incorporated as if fully set forth herein.

94.     In return for Lapham providing funding for the Trolley Pub Business, Kaapro and Cole promised to provide all of the intangible property necessary to operate the business nationwide, with the exception of "Carolina" (including, the Trolley Pub Intangible Property), and to give Lapham a 50% ownership interest in the nationwide (with the exception of "Carolina") Trolley Pub Business.

95.     As of December 15, 2015, Kaapro and Cole have made clear that they will not fulfill their obligation to provide all of the intangible property necessary to operate the business nationwide, with the exception of "Carolina", and to give Lapham a 50% ownership interest in the nationwide (with the exception of "Carolina") Trolley Pub Business.

96.     The conduct of Kaapro and Cole constitutes an anticipatory breach of their contract with Lapham.  Lapham has been damaged by that material breach.

WHEREFORE, in consideration of the foregoing, Plaintiff Thomas Lapham respectfully prays for the following relief against Defendants Kai Kaapro and Andrew Cole, jointly and severally:  (a) an award of his compensatory damages, in an amount to be proven at trial; and (b) such other and further relief as the Court may deem just and appropriate.

22

**COUNT X:  ANTICIPATORY BREACH OF CONTRACT**
(Against K&C, Plead in the Alternative to Counts VII, VIII, and IX)

97.     The allegations contained in paragraphs 1 through 54 are re-alleged and incorporated as if fully set forth herein.

98.     In return for Lapham providing funding for the Trolley Pub Business, K&C promised to provide all of the intangible property necessary to operate the business nationwide, with the exception of "Carolina" (including, the Trolley Pub Intangible Property), and to give Lapham a 50% ownership interest in the nationwide (with the exception of "Carolina") Trolley Pub Business.

99.     As of December 15, 2015, K&C has made clear that it will not fulfill its obligation to provide all of the intangible property necessary to operate the business nationwide, with the exception of "Carolina", and to give Lapham a 50% ownership interest in the nationwide (with the exception of "Carolina") Trolley Pub Business.

100.    The conduct of K&C constitutes an anticipatory breach of its contract with Lapham.  Lapham has been damaged by that material breach.

WHEREFORE, in consideration of the foregoing, Plaintiff Thomas Lapham respectfully prays for the following relief against Defendant Kaapro & Cole Ventures, LLC:  (a) an award of his compensatory damages, in an amount to be proven at trial; and (b) such other and further relief as the Court may deem just and appropriate.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all claims and issues.

**DEMAND FOR A VERIFIED ANSWER**

A verified answer is demanded.

23

Respectfully Submitted,

THOMAS LAPHAM
By counsel

_____/s/_____
Jonathan D. Frieden, Esquire (VSB No. 41452)
ODIN, FELDMAN & PITTLEMAN, P.C.
1775 Wiehle Avenue, Suite 400
Reston, Virginia 20190
(703) 218-2125
(703) 218-2160 (facsimile)
jonathan.frieden@ofplaw.com
*Counsel for Plaintiff*

## VERIFICATION

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE

AND CORRECT.  EXECUTED ON JUNE 13, 2016.

THOMAS LAPHAM

24

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 13th day of June, 2016, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system which will then send a notification of such filing (NEF), to the following:

> Kevin F.X. DeTurris, Esquire
> Laurie L. Kirkland, Esquire
> BLANKINGSHIP & KEITH, P.C.
> 4020 University Drive, Suite 300
> Fairfax, Virginia 22030
> kdeturris@bklawva.com
> lkirkland@bklawva.com
> *Counsel for Defendants*

> _____/s/_____
> Jonathan D. Frieden, Esquire (VSB No. 41452)
> ODIN, FELDMAN & PITTLEMAN, P.C.
> 1775 Wiehle Avenue, Suite 400
> Reston, Virginia 20190
> (703) 218-2125
> (703) 218-2160 (facsimile)
> jonathan.frieden@ofplaw.com
> *Counsel for Plaintiff*

#3015596v3

25