# EXHIBIT B

# Operating Agreement
## of
## Trolley Pub of Virginia, LLC

THIS OPERATING AGREEMENT (these "**Articles**") is made as of the 20th day of March, 2013 by and among the signatories identified on the signature pages hereto.

IN CONSIDERATION OF the mutual promises of the parties hereto and other good and valuable consideration, receipt and adequacy of which is hereby acknowledged, it is mutually agreed by and between the parties hereto as follows:

### I. NAME

The name of the limited liability company (the "Company") shall be "Trolley Pub of Virginia, LLC."

### II. REGISTERED OFFICE AND AGENT

The name of the registered agent of the Company shall be Thomas Lapham. The registered office of the Company shall be located at 211 Audrey's Court SE, Vienna, VA 22180.

### III. TERM

The Company shall be perpetual.

### IV. ACCOUNTING METHOD AND FISCAL YEAR

The Company shall keep its accounting records and shall report its income for income tax purposes on a method of accounting deemed appropriate by the Members. The accounting for the Company shall be prepared so as to fully, accurately, and consistently report and reflect the operations of the Company and its financial condition. The Company shall utilize the Fiscal Year as April 1st through March 31st.

### V. INTERESTS AND CONTRIBUTIONS OF MEMBERS

5.1 <u>Member; Units</u>. There shall be one class of Members. Membership interests in the Company will be represented by Equity Units that reflects a total contribution of cash, property or other things of value to the Company. The Members of the Company are those listed in Schedule A. The Company shall have authority to issue up to one million (1,000,000) units.

5.2 <u>Initial Member/Contributions</u>. The name and present mailing address of each member and the percentage interest of each member of the Company are set forth on the last page of this Agreement and on Schedule A hereto. Thomas Lapham shall contribute $60,000 cash to the venture, in exchange for 500,000 Equity Units in the Company. Trolley Pub of North Carolina, LLC, shall contribute the intellectual property, trade secrets, business plans and commitments listed in Schedule B in exchange for 500,000 Class A Units in the Company.

5.3    The initial contribution of each member shall be contributed to the Company upon execution of these Articles by such member.

5.4    An individual capital account shall be maintained for each member. The capital account of each member shall consist of such member's initial contribution, increased by:

    (a)    additional contributions made by such member, and

    (b)    such member's share of the Company's net profits,

and decreased by:

    (i)    distributions made to such member, and

    (ii)   such member's share of the Company's losses,

all in accordance with any applicable provision of the Internal Revenue Code of 1986, as amended (the "**Code**"), or any rule or regulation thereunder.

5.5    The Members agree that should Thomas Lapham contribute additional capital for the purchase of additional Trolley Pub vehicles, he shall have a right to all distributions from the Net Cash Flow produced by such additional Trolley Pub vehicles until the amount of additional capital above the Initial Contribution is paid off. After the amount of Thomas Lapham's additional contribution is paid, the distributions shall be distributed according to the manner set forth in Article 7.

5.6    Except as otherwise provided in this Agreement, a member shall not receive from the Company any part or all of his or her contribution to capital until:

    (a)    all liabilities of the Company, except liabilities to members on account of their contributions to capital, have been paid or there remains property of the Company sufficient to pay them;

    (b)    the consent of all Members is had, unless the return of the contribution to capital may be rightfully demanded as provided herein; and

    (c)    the Articles of Organization or these Articles are cancelled or so amended as to set out the withdrawal or reduction of the contributions of capital.

5.7    A member may rightfully demand the return of his or her contribution only upon the dissolution of the Company.

5.8    The Company shall have the discretion to distribute cash, notes, property or a combination thereof to a member in return for his or her contribution to capital as it deems appropriate.

## VI.    ALLOCATION OF PROFITS AND LOSSES

6.1    The profits and losses of the Company shall be determined for each fiscal year of the Company in accordance with the accounting methods followed for federal income tax purposes and otherwise in accordance with generally accepted accounting principles and procedures applied in a consistent manner and shall be deemed to have been earned ratably during the fiscal year. For purposes of

Sections 702 and 704 of the Code or the corresponding sections of any future internal revenue law or any similar tax law of any state or jurisdiction, and for such purposes only, the determination of each member's distributive share of all items of income, gain, deduction, loss, credit or allowance for any period or year shall be made in proportion to the amounts of the members' respective percentage interests in the Company during such period or year.

6.2 The profits of the Company shall be shared among the members in proportion to each member's respective sharing percentage in the Company as reflected by the member's respective unit ownership relative to the total amount of units, and the losses of the Company shall be borne by the members in proportion to each member's respective sharing percentage in the Company as reflected by the member's respective unit ownership relative to the total amount of units. Under no circumstances shall an allocation result in a requirement for a member to contribute additional capital to the Company.

## VII. DISTRIBUTIONS

7.1 To the fullest extent allowed by the Virginia Company Act (the "**Act**"), some or all of the Net Cash Flow, if any, of the Company shall be distributed quarterly among the members in proportion to each member's respective percentage interest in the Company. The Members may vote to reinvest some or all of the Net Cash Flow. The Members For such purpose, "Net Cash Flow" shall mean:

(a) For each period, all cash income and receipts of whatsoever nature or kind received by the Company less all costs and expenses incurred or paid by, and all net additions to reserves of, the Company (whether operating or capital costs, and including without limitation, all costs to acquire its interest in the real property described in Article 3, payments upon the principal of any indebtedness, secured or unsecured, of the Company, expenditures for capital improvement, additions or replacements and any other expenditures which are not deductible in arriving at the Company's federal taxable income, such as expenses for repairs and reserves to meet anticipated expenses as the Class A Members shall deem to be reasonably necessary); plus

(b) Any other funds deemed by the Class A Members to be available for distribution.

7.2 Notwithstanding Sections 6 and 7.1,

## VIII. MANAGEMENT

The Company shall be member-managed by the Members. Trolley Pub of North Carolina, LLC, shall be responsible for the day-to-day operations of the Company. Thomas Lapham shall be responsible for local business relations, general support and crisis management when necessary. The Company may appoint individuals to serve as officers of the Company, with all the ordinary rights associated with such positions. Kai Kaapro shall serve as the initial Company manager.

## IX. LEGAL TITLE TO PROPERTY

Legal title to all or any portion of the property of the Company shall be held in the name of "Trolley Pub of Virginia, LLC" or, to the extent allowed by the Act, in such other name as the Company, in its sole discretion, shall determine to be in the best interest of the Company. Without limiting the foregoing grant of authority, to the extent permitted by the Act, the Members may arrange to have title taken and held in its own name or in the names of trustees, nominees or straw parties for the Company. It is expressly understood and agreed that the manner of holding title to the property (or any part thereof) of the Company is solely for the convenience of the Company, and that all such property shall be treated as property of the Company, subject to the terms of these Articles.

## X. RIGHTS AND POWERS OF MEMBERS

10.1 The Members of the Company shall have the authority to amend these Articles provided that any such amendment shall have received the consent of those members whose aggregate percentage interests in the Company exceed fifty percent (50%) of the total percentage interests of all members of the Company and the agreement of a majority in number of the Members. A sale, exchange, lease, mortgage, pledge or other transfer of any substantial assets of the Company shall require consent of members whose aggregate percentage interests in the Company exceed seventy-five percent (75%) of the total percentage interests of all members of the Company.

10.2 Meetings of the Company for any purpose shall be held at the call of the members. All such meetings shall be held at a place designated by the members, and notice of such location and of the date and time of the meeting shall be given by the members to each member at least ten (10) days prior to such date (unless such notice is waived as to any member, by such member).

10.3 The Members of the Company shall have the right and the power to admit additional members upon the unanimous consent of all of the then members.

10.4 Members have the right to vote, by majority of voting units, on all issues related to the Company. There shall be 100 voting units. The allocation of voting units shall be distributed in the following manner:

| Member | Voting Units |
| --- | --- |
| Trolley Pub of North Carolina, LLC | 50 |
| Thomas Lapham | 50 |

## XI. TRANSFERABILITY AND REDEMPTION OF INTERESTS

11.1 Except as otherwise provided, none of the members of the Company shall have the right to transfer or assign any part or all of their interest in the Company, and any purported transfer or assignment shall be void and of no force or effect, and may be ignored by the Company and its members. If all members of the Company other than the member proposing to dispose of his or her interest do not approve of the proposed transfer or assignment by unanimous written consent, the transferee of the member's interest shall have no right to participate in the management of the business and affairs of the Company or to become a member. In that event, the transferee shall only be entitled to receive the share of profits or other compensation by way of income and the return of contributions, to which that member otherwise would be entitled.

11.2 In the event of an assignment, the Company shall, upon the unanimous written consent of all remaining Members, continue with respect to the remaining members; appropriate adjustments shall be made to their capital accounts and percentage interests to reflect the assignment of the interest of the assignor member; and an election may be made by the members, in its sole discretion, to adjust the basis of assets of the Company.

11.3 Notwithstanding any other provision in this Agreement, no transfer or assignment of all or any portion of a member's interest in the Company shall be effective, unless the transferor or assignor delivers to the Company a written opinion of counsel acceptable to the Company, to the effect that:

(a) such transfer or assignment, when added to the total of all other transfers and assignments of interest in the Company within the preceding twelve (12) months, would not

result in the Company being considered to have terminated within the meaning of Section 708 of the Code;

(b) such transferor assignment would not violate the Securities Act of 1933, as amended, or any state securities of "Blue Sky" laws applicable to the Company or the interest to be transferred or assigned; and

(c) such transfer or assignment would not cause the Company to lose its status as a partnership for federal income tax purposes, result in a nonexempt "prohibited transaction" as defined under Section 4975 of the Code, with respect to the Company or any of its members or members or cause the Company to be subject to registration as an investment company under the Investment Company Act of 1940.

11.4  Each transferor or assignor and each transferee or assignee agrees that it will pay all reasonable expenses, including attorneys' fees, incurred by the Company in connection with a transfer or assignment of all or any portion of such transferor's or assignor's interest in the Company being transferred to such transferee or assignee.

11.5  A person who is the transferee or assignee of all or any portion of the interest of a member as permitted hereby but does not become a substituted member and who desires to make a further transfer or assignment of all or any portion of such interest, shall be subject to all of the provisions of this Article 13 to the same extent and in the same manner as any member desiring to make a transfer or assignment of all or any portion of its interest.

**XII. DISSOLUTION**

12.1  The Company shall be dissolved upon the occurrence of any of the following events:

(a) by the unanimous agreement of all Class A Members, which shall be in writing;

(b) when required by law

12.2  As soon as possible following the occurrence of any of the events specified in this Article affecting the dissolution of the Company, the Company shall execute and file, with the Secretary, articles of dissolution in accordance with Sections 35-15 and 35-20 of the Act and in such form as shall be prescribed by the Secretary.

12.3  Upon the dissolution of the Company, the assets thereof shall be liquidated, and the proceeds therefrom, together with assets distributed in kind to the extent sufficient therefor, shall be applied and distributed in order of priority as follows:

(a) First, to creditors of the Company, including members who are creditors, in the order of priority provided by law, in satisfaction of liabilities of the Company other than liabilities for distribution to members under Section 25-1 or Section 25-10 of the Act;

(b) Second, to members of the Company in respect of their share of the profits and other compensation by way of income on their contributions; and

(c) Third, to members of the Company in respect of their contributions to capital.

12.4  The members of the Company shall not be personally liable for the return or repayment

of all or any portion of the contributions of any member; any such return or repayment shall be made solely from assets of the Company.

## XIII. BANK ACCOUNTS

The funds of the Company shall be deposited in such bank account or accounts as the members shall deem appropriate, in its sole discretion, and the Members shall arrange for the appropriate conduct of such accounts.

## XIV. MISCELLANEOUS PROVISIONS

14.1 Unless otherwise provided in these Articles, no member shall be liable to any other member or to the Company for any good faith act or omission to act in the exercise of his or her judgment under the provisions of these Articles.

14.2 Nothing herein contained shall be construed to constitute any member hereof the agent of any other member or to limit in any manner the members in the carrying on of their own respective business or activities.

14.3 These Articles set forth all (and are intended by all parties hereto to be an integration of all) of the covenants, promises, agreements, warranties and representations among the parties hereto with respect to the Company, the business of the Company and the property of the Company, and there are no covenants, promises, agreements, warranties or representations, oral and written, express or implied, among them other than as set forth herein.

14.4 Nothing contained in these Articles shall be construed as requiring the commission by any person of any act contrary to applicable law, including, without limitation, Section 4975 of the Code (to the extent applicable). Wherever there is any conflict between any provision of these Articles and any statute, law, ordinance or regulation contrary to which the parties have no legal right to contract, the latter shall prevail, but in such manner that the provision(s) of these Articles thus affected shall be curtailed and limited only to the extent necessary to conform with said requirement of law. In the event that any part, section, paragraph or clause of these Articles shall be held to be indefinite, invalid or otherwise unenforceable, the entire Articles shall not fail on account thereof, and the balance of the Articles shall continue in full force and effect.

14.5 The Company shall indemnity, defend and save harmless each member or former member of the Company against expenses actually and reasonably incurred by him, her or it in connection with the defense of an action, suit or proceeding, civil or criminal, in which he, she or it is made a party by reason of being or having been such member, except in relation to matters as to which he, she or it shall be adjudged in the action, suit or proceeding to be liable for gross negligence or willful misconduct.

## XIV. GOVERNING LAW

It is the intention of the parties hereto that these Articles shall be governed by and construed and enforced in accordance with the internal laws of the State of Virginia

## XV. BURDEN AND BENEFIT

These Articles are binding upon and shall inure to the benefit of the parties hereto and their respective heirs, guardians, executors, administrators, personal and legal representatives, and successors

and to the assigns of the parties hereto to the extent, but only to the extent, the same is provided for in accordance with, and permitted by, the provisions of these Articles.

## XVI. NOTICES

Except as otherwise provided in these Articles, any notice, consent or other communication required or permitted hereunder shall be in writing and shall be addressed, in the case of the Company, to its principal place of business specified in Article 2, in the case of the members, to its office at the location specified in Article 9.1, and, in the case of any member, to its address set forth opposite its signature below, as specified on or to such other address or person as any of the foregoing parties shall furnish to the other parties in writing; and any such communication so addressed shall be deemed to have been given when delivered by hand or on the earlier of actual receipt and three (3) business days after being sent by registered or certified mail, postage prepaid, return receipt requested, or one (1) business day after being sent by overnight courier, telegram, or cable or on actual receipt after being sent by any means not specified herein.

IN WITNESS WHEREOF, the parties have executed these Articles as of the day and year first above written.

Address: 4734 Altha St
Raleigh, NC 27606

Name printed: Kai Kaapro, on behalf of Trolley Pub of North Carolina, LLC


Address: at 211 Audrey's Court SE
Vienna, VA 22180

Name printed: Thomas Lapham

7

## Schedule A

## CapTable

| MEMBER | UNITS | OWNERSHIP % | VOTING % |
|---|---:|---:|---:|
| Trolley Pub of North Carolina, LLC | 500,000 | 50% | 50% |
| Thomas Lapham | 500,000 | 50% | 50% |
| | 1,000,000 | 100% | 100% |

## Schedule B

### Trolley Pub of North Carolina, LLC Contributions

- Trolley Pub logo
- Trolley Pub trademark
- Trolley Pub image and branding
- Know-how
- Marketing Plans
- Technical information
- Supplier lists and information
- Financial plans
- Contractor and builder information
- Business plans
- Management commitment
- Software
- Design work