# EXHIBIT C

# Operating Agreement
## of
## Trolley Pub Holdings, LLC

THIS OPERATING AGREEMENT is made as of the ___ day of June, 2015 by and among the signatories identified on the signature pages hereto.

IN CONSIDERATION OF the mutual promises of the parties hereto and other good and valuable consideration, receipt and adequacy of which is hereby acknowledged, it is mutually agreed by and between the parties hereto as follows:

## I. DEFINITIONS

1.1 "**Act**" shall mean the Virginia Company Act, as amended from time to time and any successor statute or subsequent codification or recodification of the Act.

1.2 "**Articles**" or "**Agreement**" shall mean this Operating Agreement, as originally executed or as amended, modified, supplemented or restated from time to time.

1.3 "**Capital Contribution**" shall mean, in the case of any Member as of any date of determination, the aggregate amount of cash, property, intellectual property or services rendered, or a promissory note or other binding obligation to contribute cash or property or to perform services that such Member shall have contributed to the Company on or prior to such date, which shall not exceed the Member Contributions in 6.2 without written approval from all Members.

1.4 "**Code**" shall mean the Internal Revenue Code of 1986, as amended from time to time and any successor statute or subsequent codification or recodification of the federal income tax laws of the United States.

1.5 "**Company**" shall mean Trolley Pub Holdings, LLC, a Virginia limited liability company, as such limited liability company may from time to time be constituted, or any successor in interest for such limited liability company.

1.6 "**Distribution**" shall mean any distribution pursuant to Article VII by the Company of cash or property to the Members.

1.7 "**Distribution Preference**" shall mean a sum of capital which shall be distributed to a Member prior to the ordinary distribution to the Members in proportion to each member's respective Percentage Interest in the Company.

1.8 "**Existing Business**" shall mean a business engaged with charging customers for tours on pedal-powered vehicles.

1.9 "**Liquidation Event**" shall mean the event of the Company's dissolution pursuant to Article IV; or the sale of all or substantially all of the Equity Units or assets of the Company to an individual or entity which is not a Member of the Company.

  1.10 "**Liquidation Preference**" shall mean a sum of capital which shall be distributed to a Member before the distribution to the Members in proportion to each member's respective percentage interest in the Company

  1.11 "**Member**" shall mean an individual or entity owning membership interest in the Company.

  1.12 "**Membership Interest**" shall mean the rights of a Member in Distributions (liquidating or otherwise) and allocations of the profits, losses, gains, deductions, and credits of the Company.

  1.13 "**Net Cash Flow**" shall mean For each period, all cash income and receipts of whatsoever nature or kind received by the Company less all costs and expenses incurred or paid by, and all net additions to reserves of, the Company (whether operating or capital costs, and including without limitation, all costs to acquire its interest in the real property, payments upon the principal of any indebtedness, secured or unsecured, of the Company, expenditures for capital improvement, additions or replacements and any other expenditures which are not deductible in arriving at the Company's federal taxable income, such as expenses for repairs and reserves to meet anticipated expenses as the Members shall deem to be reasonably necessary); plus any other funds deemed by the Members to be available for distribution.

  1.14 "**Percentage Interest**" shall mean means, with respect to any Member, the total percentage interest set forth opposite each Member's name on Schedule A.

## II. NAME

The name of the limited liability company shall be "Trolley Pub Holdings, LLC."

## III. REGISTERED OFFICE AND AGENT

The name of the registered agent of the Company shall be Thomas Lapham. The registered office of the Company shall be located at 211 Audrey's Court SE, Vienna, VA 22180.

## IV. TERM

The Company shall be perpetual.

## V. ACCOUNTING METHOD AND FISCAL YEAR

The Company shall keep its accounting records and shall report its income for income tax purposes on a method of accounting deemed appropriate by the Members. The accounting for the Company shall be prepared so as to fully, accurately, and consistently report and reflect the operations of the Company and its financial condition. The Company shall utilize the Fiscal Year as January 1st through December 31st.

## VI. INTERESTS AND CONTRIBUTIONS OF MEMBERS

  6.1 Member; Units. There shall be one class of Members. Membership Interests in the Company will be represented by Equity Units that reflects a total contribution of cash, property or other things of value to the Company. The Members of the Company are those listed in Schedule A. The Company shall have authority to issue up to one million (1,000,000) units.

6.2 <u>Member Contributions</u>. The name and present mailing address of each member and the percentage interest of each member of the Company are set forth on the last page of this Agreement and on Schedule A hereto. Thomas Lapham shall make a Capital Contribution of $400,000 to the venture, in exchange for 500,000 Equity Units in the Company. Kaapro & Cole Ventures, LLC, shall make a Capital Contribution of intellectual property, trade secrets, business plans and commitments listed in Schedule B in exchange for 500,000 Class Equity Units in the Company. Kaapro & Cole Ventures, LLC, shall not be obligated to make any cash contribution to the Company. Any contributions made to any other company or entity shall not lower either Member's Capital Contribution to the Company, unless the company or entity is a wholly owned subsidiary of the Company on the date of said contribution.

6.3 The contribution of each member shall be contributed to the Company upon execution of these Articles by such member, or contributed within

6.4 An individual capital account shall be maintained for each member. The capital account of each member shall consist of such member's initial contribution, increased by:

    (a) additional contributions made by such member, and

    (b) such member's share of the Company's net profits,

and decreased by:

    (i) distributions made to such member, and

    (ii) such member's share of the Company's losses,

all in accordance with any applicable provision of the Code, or any rule or regulation thereunder.

6.5 The Members agree that any further capital contributions Thomas Lapham contributes to the Company that exceeds the Membership Contribution in 5.3 shall be a note to the company, to be repaid at 4% annual interest within two years of contribution date.

6.6 Except as otherwise provided in this Agreement, a member shall not receive from the Company any part or all of his or her contribution to capital until:

    (a) all liabilities of the Company, except liabilities to members on account of their contributions to capital, have been paid or there remains property of the Company sufficient to pay them;

    (b) the consent of all Members is had, unless the return of the contribution to capital may be rightfully demanded as provided herein; and

    (c) the Articles of Organization or these Articles are cancelled or so amended as to set out the withdrawal or reduction of the contributions of capital.

6.7 A member may rightfully demand the return of his or her contribution only upon the dissolution of the Company.

6.8 The Company shall have the discretion to distribute cash, notes, property or a combination thereof to a member in return for his or her contribution to capital as it deems appropriate.

## VII. ALLOCATION OF PROFITS AND LOSSES

7.1 The profits and losses of the Company shall be determined for each fiscal year of the Company in accordance with the accounting methods followed for federal income tax purposes and otherwise in accordance with generally accepted accounting principles and procedures applied in a consistent manner and shall be deemed to have been earned ratably during the fiscal year. For purposes of Sections 702 and 704 of the Code or the corresponding sections of any future internal revenue law or any similar tax law of any state or jurisdiction, and for such purposes only, the determination of each member's distributive share of all items of income, gain, deduction, loss, credit or allowance for any period or year shall be made in proportion to the amounts of the members' respective percentage interests in the Company during such period or year.

7.2 The profits of the Company shall be shared among the membership in proportion to each member's respective sharing percentage in the Company as reflected by the member's respective unit ownership relative to the total amount of units, and the losses of the Company shall be borne by the members in proportion to each member's respective sharing percentage in the Company as reflected by the member's respective unit ownership relative to the total amount of units. Under no circumstances shall an allocation result in a requirement for a member to contribute additional capital to the Company.

7.3 Notwithstanding the requirements of 7.2, for the fiscal year of 2014, any loss, if one exists, shall be borne by Thomas Lapham.

## VIII. DISTRIBUTIONS

8.1 To the fullest extent allowed by the Act, some or all of the Net Cash Flow, if any, of the Company may be distributed quarterly among the members in proportion to each member's respective Percentage Interest in the Company. The Members may vote to reinvest the Net Cash Flow, subject the limitations in Section 8.2.

8.2 The Members agree that the Company shall distribute a minimum of 45% of Net Cash Flow in any given Fiscal Year to offset any tax liability incurred by the profits of the Company and to provide cash flow for the Members.

8.3 Tom Lapham shall have a Distribution Preference on the amount of his Membership Contribution used towards the purchase of an Established Business.

## IX. MANAGEMENT

The Company shall be member-managed by the Members. The Company may appoint individuals to serve as officers of the Company, with all the ordinary rights associated with such positions.

## X. LEGAL TITLE TO PROPERTY

Legal title to all or any portion of the property of the Company shall be held in the name of "Trolley Pub Holdings, LLC" or, to the extent allowed by the Act, in such other name as the Company, in its sole discretion, shall determine to be in the best interest of the Company. Without limiting the foregoing grant of authority, to the extent permitted by the Act, the Members may arrange to have title

4

taken and held in its own name or in the names of trustees, nominees or straw parties for the Company. It is expressly understood and agreed that the manner of holding title to the property (or any part thereof) of the Company is solely for the convenience of the Company, and that all such property shall be treated as property of the Company, subject to the terms of these Articles.

## XI. RIGHTS AND POWERS OF MEMBERS

11.1 The Members of the Company shall have the authority to amend these Articles provided that any such amendment shall have received the consent of those members whose aggregate percentage interests in the Company exceed fifty percent (50%) of the total percentage interests of all members of the Company and the agreement of a majority in number of the Members. A sale, exchange, lease, mortgage, pledge or other transfer of any substantial assets of the Company shall require consent of members whose aggregate percentage interests in the Company exceed seventy-five percent (75%) of the total percentage interests of all members of the Company.

11.2 Meetings of the Company for any purpose shall be held at the call of the members. All such meetings shall be held at a place designated by the members, and notice of such location and of the date and time of the meeting shall be given by the members to each member at least seven (7) days prior to such date (unless such notice is waived as to any member, by such member). Notice may be waived by the Members with a fifty (50%) vote. Meetings may be held in person, by teleconference or via electronic mail (E-mail).

11.3 The Members of the Company shall have the right and the power to admit additional members upon the unanimous consent of all of the then members.

11.4 Members have the right to vote, by majority of voting units, on all issues related to the Company. There shall be 100 voting units. The allocation of voting units shall be distributed in the following manner:

| Member | Voting Units |
| --- | --- |
| Trolley Pub of North Carolina, LLC | 50 |
| Thomas Lapham | 50 |

## XII. TRANSFERABILITY AND REDEMPTION OF INTERESTS

12.1 Except as otherwise provided, none of the members of the Company shall have the right to transfer or assign any part or all of their interest in the Company, and any purported transfer or assignment shall be void and of no force or effect, and may be ignored by the Company and its members. If all members of the Company other than the member proposing to dispose of his or her interest do not approve of the proposed transfer or assignment by unanimous written consent, the transferee of the member's interest shall have no right to participate in the management of the business and affairs of the Company or to become a member. In that event, the transferee shall only be entitled to receive the share of profits or other compensation by way of income and the return of contributions, to which that member otherwise would be entitled.

12.2 In the event of an assignment, the Company shall, upon the unanimous written consent of all remaining Members, continue with respect to the remaining members; appropriate adjustments shall be made to their capital accounts and percentage interests to reflect the assignment of the interest of the assignor member; and an election may be made by the members, in its sole discretion, to adjust the basis of assets of the Company.

    12.3    Notwithstanding any other provision in this Agreement, no transfer or assignment of all or any portion of a member's interest in the Company shall be effective, unless the transferor or assignor delivers to the Company a written opinion of counsel acceptable to the Company, to the effect that:

    (a)    such transfer or assignment, when added to the total of all other transfers and assignments of interest in the Company within the preceding twelve (12) months, would not result in the Company being considered to have terminated within the meaning of Section 708 of the Code;

    (b)    such transferor assignment would not violate the Securities Act of 1933, as amended, or any state securities of "Blue Sky" laws applicable to the Company or the interest to be transferred or assigned; and

    (c)    such transfer or assignment would not cause the Company to lose its status as a partnership for federal income tax purposes, result in a nonexempt "prohibited transaction" as defined under Section 4975 of the Code, with respect to the Company or any of its members or members or cause the Company to be subject to registration as an investment company under the Investment Company Act of 1940.

    12.4    Each transferor or assignor and each transferee or assignee agrees that it will pay all reasonable expenses, including attorneys' fees, incurred by the Company in connection with a transfer or assignment of all or any portion of such transferor's or assignor's interest in the Company being transferred to such transferee or assignee.

    12.5    A person who is the transferee or assignee of all or any portion of the interest of a member as permitted hereby but does not become a substituted member and who desires to make a further transfer or assignment of all or any portion of such interest, shall be subject to all of the provisions of this Article 12 to the same extent and in the same manner as any member desiring to make a transfer or assignment of all or any portion of its interest.

### XIII. LIQUIDATION PREFERENCE

    13.1    Kaapro & Cole Ventures, LLC, shall have a Liquidation Preference in the amount of $50,000.

    13.2    The Liquidation Preference shall come in to effect in the case of Dissolution as defined in Article 14 or any Liquidation Event.

### XIV. DISSOLUTION

    14.1    The Company shall be dissolved upon the occurrence of any of the following events:

    (a)    by the unanimous agreement of all Members, which shall be in writing;

    (b)    when required by law

    14.2    As soon as possible following the occurrence of any of the events specified in this Article affecting the dissolution of the Company, the Company shall execute and file, with the Secretary, articles of dissolution in accordance with Sections 35-15 and 35-20 of the Act and in such form as shall be prescribed by the Secretary.

14.3 Upon the dissolution of the Company, the assets thereof shall be liquidated, and the proceeds there from, together with assets distributed in kind to the extent sufficient therefor, shall be applied and distributed in order of priority as follows:

(a) First, to creditors of the Company, including members who are creditors, in the order of priority provided by law, in satisfaction of liabilities of the Company other than liabilities for distribution to members under Section 25-1 or Section 25-10 of the Act;

(b) Second, to the Members in the amount of any unfulfilled Liquidation or Distribution Preferences; and

(c) Third, to members of the Company in respect of their share of the profits and other compensation by way of income on their contributions

14.4 The members of the Company shall not be personally liable for the return or repayment of all or any portion of the contributions of any member; any such return or repayment shall be made solely from assets of the Company.

## XV. BANK ACCOUNTS

The funds of the Company shall be deposited in such bank account or accounts as the members shall deem appropriate, in its sole discretion, and the Members shall arrange for the appropriate conduct of such accounts.

## XVI. DISPUTES AND ARBITRATION

If the parties are unable to resolve any dispute arising out of this Agreement, either during or after its term informally, including the question as to whether any particular matter is arbitrable, the parties agree to submit the matter to binding arbitration. In the event the parties have not agreed upon an arbitrator within 20 days after either party has demanded arbitration, either party may file a demand for arbitration with the Richmond regional office of the American Arbitration Association ("AAA") and a single arbitrator shall be appointed in accordance with the then existing Commercial Arbitration Rules of the AAA. Discovery may be conducted either upon mutual consent of the parties, or by order of the arbitrator upon good cause being shown. In ruling on motions pertaining to discovery, the arbitrator shall consider that the purpose of arbitration is to provide for the efficient and inexpensive resolution of disputes, and the arbitrator shall limit discovery whenever appropriate to insure that this purpose is preserved. The dispute between the parties shall be submitted for determination within 60 days after the arbitrator has been selected. The decision of the arbitrator shall be rendered within 30 days after the conclusion of the arbitration hearing. The decision of the arbitrator shall be in writing and shall specify the factual and legal basis for the decision. Upon stipulation of the parties, or upon a showing of good cause by either party, the arbitrator may lengthen or shorten the time periods set forth herein for conducting the hearing or for rendering a decision. The decision of the arbitrator shall be final and binding upon the parties. Judgment to enforce the decision of the arbitrator, whether for legal or equitable relief, may be entered in any court having jurisdiction thereof, and the parties hereto expressly and irrevocably consent to the jurisdiction of the Virginia Courts for such purpose. The arbitrator shall conduct all proceedings pursuant to the then existing Commercial Arbitration Rules of the AAA, to the extent such rules are not inconsistent with the provisions of this Article XVI. The Uniform Rules of Procedure for Arbitration shall not apply to any arbitration proceeding relating to the subject matter or terms of the documents. In the event a dispute is submitted to arbitration pursuant to this Section, the prevailing party shall be entitled to the payment of its reasonable attorney's fees and costs, as determined

by the arbitrator. Each of the parties shall keep all disputes and arbitration proceedings strictly confidential, except for disclosures of information required by applicable law or regulation.

## XVII. MISCELLANEOUS PROVISIONS

17.1 Unless otherwise provided in these Articles, no member shall be liable to any other member or to the Company for any good faith act or omission to act in the exercise of his or her judgment under the provisions of these Articles.

17.2 Nothing herein contained shall be construed to constitute any member hereof the agent of any other member or to limit in any manner the members in the carrying on of their own respective business or activities.

17.3 These Articles set forth all (and are intended by all parties hereto to be an integration of all) of the covenants, promises, agreements, warranties and representations among the parties hereto with respect to the Company, the business of the Company and the property of the Company, and there are no covenants, promises, agreements, warranties or representations, oral and written, express or implied, among them other than as set forth herein.

17.4 Nothing contained in these Articles shall be construed as requiring the commission by any person of any act contrary to applicable law, including, without limitation, Section 4975 of the Code (to the extent applicable). Wherever there is any conflict between any provision of these Articles and any statute, law, ordinance or regulation contrary to which the parties have no legal right to contract, the latter shall prevail, but in such manner that the provision(s) of these Articles thus affected shall be curtailed and limited only to the extent necessary to conform with said requirement of law. In the event that any part, section, paragraph or clause of these Articles shall be held to be indefinite, invalid or otherwise unenforceable, the entire Articles shall not fail on account thereof, and the balance of the Articles shall continue in full force and effect.

17.5 The Company shall indemnity, defend and save harmless each member or former member of the Company against expenses actually and reasonably incurred by him, her or it in connection with the defense of an action, suit or proceeding, civil or criminal, in which he, she or it is made a party by reason of being or having been such member, except in relation to matters as to which he, she or it shall be adjudged in the action, suit or proceeding to be liable for gross negligence or willful misconduct.

## XVIII. GOVERNING LAW

It is the intention of the parties hereto that these Articles shall be governed by and construed and enforced in accordance with the internal laws of the State of Virginia

## XIV. BURDEN AND BENEFIT

These Articles are binding upon and shall inure to the benefit of the parties hereto and their respective heirs, guardians, executors, administrators, personal and legal representatives, and successors and to the assigns of the parties hereto to the extent, but only to the extent, the same is provided for in accordance with, and permitted by, the provisions of these Articles.

## XX. NOTICES

Except as otherwise provided in these Articles, any notice, consent or other communication

8

required or permitted hereunder shall be in writing and shall be addressed, in the case of the Company, to its principal place of business specified in Article 3, in the case of the members, to its office at the location specified on the signature page, and, in the case of any member, to its address set forth opposite its signature below, as specified on or to such other address or person as any of the foregoing parties shall furnish to the other parties in writing; and any such communication so addressed shall be deemed to have been given when delivered by hand or on the earlier of actual receipt and three (3) business days after being sent by registered or certified mail, postage prepaid, return receipt requested, or one (1) business day after being sent by overnight courier, telegram, or cable or on actual receipt after being sent by any means not specified herein.

    IN WITNESS WHEREOF, the parties have executed these Articles as of the day and year first above written.

Address: 323 W Davie St
         Raleigh, NC 27601

_____

Name printed: Kai Kaapro, Member/Manager of Kaapro & Cole Ventures, LLC

_____

Name printed: Andrew Cole, Member/Manager of Kaapro & Cole Ventures, LLC

Address: at 211 Audrey's Court SE
         Vienna, VA22180

_____

Name printed: Thomas Lapham

## Schedule A

## CapTable

| MEMBER | EQUITY UNITS | PERCENTAGE INTEREST | VOTING % |
|---|---|---|---|
| Kaapro & Cole Ventures, LLC | 500,000 | 50% | 50% |
| Thomas Lapham | 500,000 | 50% | 50% |
| | 1,000,000 | 100% | 100% |

# Schedule B

## Kaapro & Cole Ventures, LLC Contributions

- Trolley Pub logo
- Trolley Pub trademark
- Trolley Pub image and branding
- Know-how
- Marketing Plans
- Technical information
- Supplier lists and information
- Financial plans
- Contractor and builder information
- Business plans
- Design work